### KINDEL ET AL. v. HALL.

1. NEGLIGENCE—FELLOW SERVANT.

The plaintiff, in an action against his employer for damages occasioned by the negligence of a fellow servant, is bound not only to establish the unskillfulness and incompetency of the fellow servant, but also a want of care in the original hiring, or his incompetency after the employment which was known to the employer or ought to have been known to him in the ordinary management of his business.

2. SAME—EVIDENCE.

Evidence of a fellow servant's negligence does not necessarily tend to sustain an allegation of his unskillfulness and incompetency.

3. PRACTICE—INSTRUCTIONS—STATEMENT OF ISSUES.

A clear statement of the issues to the jury is eminently proper, but the court should be careful to state all the issues and put the case not only as it is laid by the plaintiff, but also as it is controverted by the defendant. He is entitled to have his defense and case stated.

4. EVIDENCE—DECLARATION OF COPARTNER.

Knowledge of one member of a firm that one of their employés is negligent and unfit for the discharge of his duties fixes a responsibility on the copartners for retaining such employé, and the declarations of such member made after an accident occasioned by such employé's negligence tending to show such knowledge is admissible in evidence for that purpose.

*Appeal from the District Court of Arapahoe County.*

Messrs. OSBORN & TAYLOR and Mr. W. W. COVER, for appellants.

Mr. R. M. SNAVELY and Mr. THOMAS F. ASHWORTH, for appellee.

BISSELL, J., delivered the opinion of the court.

Kindel and Stewart, the appellants, as copartners, manufactured mattresses in the city of Denver, in 1886. The business required the operation of a machinery plant, and the firm put into its factory a couple of boilers and an engine for manufacturing purposes. A description of the building

and its surroundings is unimportant. It is enough to say the
firm employed Thomas Hicks as an engineer. He had been
doing that work for some months prior to the accident. The
appellee, Hall, was running the pickers in a part of the build-
ing some six or seven feet away from the boilers and in the
main portion of the manufactory. The power was taken into
the factory in the usual way. In December, 1886, one of
the boilers exploded. It shattered the building which it
occupied, destroyed the walls of the main factory, and Hall
was thrown down by the force of the explosion and covered
by the falling bricks and material. The explosion was the
immediate occasion of Hall's injury. The evidence does not
disclose the cause of the accident. Considerable proof was
put in tending to show the condition and character of the
boilers, their adaptation to the uses to which they were put,
and, generally, their safe and substantial construction. The
plaintiff made no attempt to show the cause of the explosion.
When he brought his suit, he predicated his action on several
grounds. The boiler was alleged to be unsafe and defective;
the defendants were charged to have been negligent in the
management and operation of the steam power, and to have
overtaxed the capacity of the boilers. No farther reference
will be made to these two features of the case, because no
successful effort was made to establish either one of them, and
they were withdrawn from the consideration of the jury by
the court in its charge. This left the case to stand solely on
the allegation that the engineer, Hicks, was unskillful and
incompetent, to the knowledge of the defendants, who were
therefore responsible for his unskillfulness and incompetency.
This was the only issue submitted to the jury, and the only
one towards which any material evidence was directed. We
do not wish by this statement to decide the other issues were
not presented by the pleadings, nor that the plaintiff may
not offer whatever testimony he can procure to support them,
and, if he can enlarge his case in these particulars, go to the
jury thereon. All we do is to disregard them in this hearing,
because they were not sufficiently supported and were taken

from the jury by the instructions. The evidence to establish the unskillfulness and incompetency of the engineer is neither full nor satisfactory. In reality, all which tended in that direction came from the proof of the happening of the acci- *ᵒ* dent. All the direct testimony tended to show that Hicks possessed a reasonable amount of skill and knowledge in the management of engines and boilers. There was some evidence which showed him to be neglectful of his duty, and negligent rather than unskillful. We do not intend, however, to comment particularly on this testimony, nor to determine the appeal on the precise ground that the proof was inadequate to warrant the submission of the cause to the jury. The defendants moved for a nonsuit, and this proposition is urged on our attention with a good deal of force by counsel, and if the case were not going back for a new trial, we might feel compelled to express our convictions respecting it. In view of the continuance of the litigation, we deem it best to withhold our views. There was no testimony tending to prove that Kindel and Stewart knew Hicks to be unskillful when they employed him and put him in charge of the machinery. The only testimony looking in that direction was the proof of what Kindel said subsequent to the accident, respecting his discharge and the cause of it. This testimony was denied by Kindel. Both Kindel and Stewart objected to the evidence, because there was nothing to connect Stewart directly with the admission, or with knowledge of it. One of the errors assigned by appellants' counsel rests on this objection. After the testimony was in, the court instructed the jury, and stated the plaintiff's claim rested on three specific allegations. By the third clause of the charge he withdrew the first two matters from consideration. The defendants, however, had pleaded that Hicks was a fellow servant with Hall, and if the explosion occurred by reason of his negligence, the plaintiff was not entitled to recover because of that relationship. They asked a specific instruction covering this matter, which the court refused. No instruction touching it was given. There was evidence offered to show

that Hicks absented himself from his post, and the court charged the jury if they found this practice existed and was known to the defendants, or either of them, the jury were entitled to consider it in connection with any other evidence in the case bearing on the question of his skill and competency, although they were told they were not at liberty to find Hicks unskillful or incompetent from the mere fact that he had been guilty of this improper practice. On the conclusion of the trial, the jury rendered a verdict for $500, from which the defendants prosecute this appeal.

They were manifestly prejudiced by the course which the proceedings took. The responsibility of the master for injuries sustained by a servant, because of the negligence of his coemployé, is tolerably well settled. If the injury is occasioned by the negligence of the coemployé, the master cannot be made liable without proof of the employment of an unskillful servant in the first instance, or a failure to exercise due care in the selection, or a neglect to discharge him, if the employer subsequently learns that he is or ought to have known him to be incompetent. This is the law of Colorado, as of most other states. *Summerhays v. Kansas Pac. Ry.*, 2 Colo. 484; *Denver, So. Park & Pac. Ry. Co. v. Driscoll*, 12 Colo. 520; *Murray v. D. & R. G. Ry. Co.*, 11 Colo. 124; *Colo. C. & I. Co. v. Lamb*, 6 Colo. App. 255.

The plaintiff made no attempt to bring his case within this well recognized doctrine. There was nothing which tended to show a want of care in the selection of Hicks, nor was any knowledge of his incompetency brought home to the firm after he had been employed. Under these circumstances, if the injury was occasioned by reason of his negligence, Hall could not recover. He was not only bound to establish Hicks' unskillfulness and incompetency as one element of his case, but he was bound to go farther and establish a want of care on the part of the firm in the original hiring, or evidence of his incompetency after the employment which was known to the firm, or ought to have been known to them in the ordinary management of their business. This

makes it very evident the court erred in refusing to instruct the jury that if they found the accident happened by reason of the engineer's negligence, the plaintiff was not entitled to recover, because that risk he took on himself as one of the conditions and burdens of employment in the same factory as a coservant. There was so much evidence about this matter the jury were very liable to be misled, and from the proof infer the engineer's unskillfulness because of his negligence. The defendants were entitled to have this issue clearly defined and the jury definitely instructed respecting their duty in the premises. The failure of the court to give the instruction, or some instruction regarding the responsibility of the master for the negligence of a coemployé, was error, which tended to the defendants' prejudice.

There is manifestly a wide difference between what will constitute negligence and what will establish the possession of skill or the want of it. It might easily be true the engineer was entirely competent and skillful to run the engine and manage the boilers, and at the same time he may have been negligent in the discharge of his duties, and his negligence may have occasioned the injury. The negligence of the engineer as established by the testimony in no manner tended to show him incompetent to discharge his duties. He may have been negligent, but that would not of necessity make the master responsible. There may be negligence of such a character in the discharge of responsible functions and the performance of a dangerous duty as possibly to amount to proof of the unskillfulness of the person who is so grossly negligent. We need not consider whether a case might arise in which this would be true, because in the present controversy the evidence approaches no such level. Since this is true, the jury ought not to have been told that if they found Hicks was frequently and for an improper length of time absent from his post, and this practice was known, they were authorized to consider it as bearing on the question of his skill and competency. The jury were liable to be misled by such an instruction and not to recognize the limitation which the court put on it, and, having found Hicks

was frequently unduly absent, naturally conclude from this circumstance he was unskillful and incompetent. It was error for the court to state the law as it was put in that instruction.

At the commencement of the charge the court undertook to state the issues to the jury. This was eminently proper, and it is always a wise precaution for the trial court to take. A clear, careful, and perspicacious statement of the issues always enables a jury to more readily reach a conclusion and more readily apprehend the facts and apply the law. But the court should be careful to state all the issues and put the case not only as it is laid by the plaintiff, but as it is controverted by the defendants. They are entitled to have their defense and their case stated. We are not prepared to say a statement of the plaintiff's case, and a failure to state the defendant's, will always be error. It is a matter which depends so largely on the circumstances of each particular case that no general rule can be laid down which will be universally applicable, though many courts hold it to be error to partly and imperfectly state the issues. *Cook et al. v. Merritt*, 15 Colo. 212; *Perot v. Cooper*, 17 Colo. 80; *Potter v. C., R. I. & P. Ry. Co.*, 46 Iowa, 399; *Fleischmann v. Miller*, 38 Mo. App. 177; *Hoffman v. Parry*, 23 Mo. App. 20; *Dassler v. Wisley*, 32 Mo. 498.

The reversal is specifically put on the error which the court committed in giving certain instructions and in refusing others. This point respecting the statement of the issues is much relied on by counsel, and the law is therefore stated.

There is another matter concerning which there has been considerable argument. It respects the evidence of the declaration which Kindel made after the accident respecting Hicks and his work. When the witness was asked about what Kindel had said, counsel objected because it was immaterial and irrelevant,—an objection which signifies little and fails to call the attention of the court to the difficulty with the interrogatory. Counsel for one of the defendants, Stewart, objected because it was a declaration of Kindel, and by it his copartner ought not to be bound. It is now very gen-

erally held that no proof can be offered of what has been done after an accident, that therefrom an inference may be drawn of negligence prior to the injury. Such evidence is held incompetent because it in no manner tends to establish negligence or throw light on what has been done, and really tends to further the continuance of conditions which perhaps ought to be immediately remedied. It is a matter which has received a good deal of attention in different courts. It was settled in this state in a very recent case by the supreme court. *Anson v. Evans*, 19 Colo. 274.

We do not regard this evidence as coming within that doctrine. One of the things which the plaintiff was bound to show was a want of care on the part of the master in the employment of his servant, or a want of care in continuing him in the employment after he was discovered to be negligent and unfit for the discharge of his responsible duties. What Kindel said was undoubtedly competent for the purpose of showing Kindel's knowledge, and therefore fixing a responsibility on the firm for retaining Hicks. We cannot see why Stewart is not bound by these declarations. The relations of copartners are of that intimate character, and each have such wide powers as the agent of the other, that we are unable to see why the knowledge which Kindel may have acquired respecting the engineer might not have bound Stewart, and he be chargeable for the retention of Hicks after he was found incompetent. This is on the assumption the jury shall ultimately conclude he was either incompetent and unskillful when hired, or became so afterwards to the knowledge of the firm, and that the firm failed to use reasonable care in the original selection, or in ascertaining his unfitness after the hiring began. All these things must concur in order to charge them with responsibility, and on the proof satisfying the jury on these matters a verdict might be upheld.

For the errors which the court committed in instructing the jury, this case must be reversed and remanded for a new trial.

*Reversed.*